

Dashiell Declaration

Thomas C. Dashiell, SBN 60918
Law Offices of Thomas C. Dashiell
P.O Box 5125
Berkeley, CA 94705
(510) 19-1969 (Phone)
(510) 649-1799(Fax)
Attorney for Prospective Purchaser of Smarie Investments LLC

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>DAVID ROMO,<br>STACEY MARIE ROMO,<br><br>Debtors. | Case No. 11-21788-C-7<br><br>D.C. No. JRR-2<br><br>DECLARATION OF DASHIELL RE TRUSTEE'S MOTION FOR SALE OF ASSETS<br><br>Date: July 26, 2011<br>Time: 9:30 a.m.<br>Courtroom: 35, Judge Klein |

TO: U.S. TRUSTEE, CHAPTER 7 TRUSTEE, AND ALL OTHER INTERESTED PARTIES:

The undersigned, Thomas C. Dashiell, do hereby declare as follows:

1. I am a licensed California attorney, and hereby make this Declaration under penalty or perjury.

2. The purpose if this Declaration is to apprise the Court of the undersigned's interest in acquiring Smarie Investments LLC ("Smarie"). However, the undersigned was informed by the Bankruptcy Trustee on July 19, 2011 that he does not now intend to sell Smarie. Therefore, the undersigned does not now intend to be a bidder for Smarie at the hearing referenced above.

3. The undersigned is the sole Manager of several limited liability companies (LLCs), each of which is in the business of building and selling houses that have been constructed by the LLCs. Smarie is a Member of each of these LLCs. The undersigned, as Manager of the LLCs, has a fiduciary responsibility to the investors in the LLCs to maximize the returns to them. It should be noted that by far the largest investors in the LLCs are investors who are clients of Sells Financial Services, Inc. ("Sells"). Sells'

Dashiell Declaration

clients have invested collectively more than $4,000,000 in these LLCs. Sells clients have also loaned substantial sums to the Madhvani's, some of which is secured by the Trust Deed discussed below, and which was recently assigned from Smarie to Sells.

4. Smarie is wholly-owned by David and Stacey Romo. As the Court is aware, David Romo was recently indicted for various financial frauds relating to real estate transaction. The actual indictment named Smarie as a participant in these alleged frauds.

5. Shortly after Mr. Romo's indictment, the undersigned visited with Old Republic Title Company, which had been providing title insurance to purchasers of the homes from some of the homebuilding LLCs. I was informed by the Chief Title Officer at Old Republic, that because Smarie was named in the indictment, Old republic would no longer issue title insurance to the purchasers of the LLCs' homes. He also told me that IF Smarie resigned from the LLCs, then Old Republic "might" the issue title insurance.

6. I subsequently met with representatives of other major title insurance companies in California, including Fidelity National Title Comapny and First Republic Title Commpany. I was told by their title officers that they shared the concerns of Old Republic, to wit, that Smarie's continuing interest as a Member of the LLCs would make it difficult, if not impossible, for these companies to issue title insurance to the LLCs' homebuyers.

7. My sole interest in acquiring Smarie on July 12 was to cause it to resign from the homebuilding LLCs, so that the LLCs can obtain title insurance and therefore close house sales, and hopefully return to LLC investors some of the money that these investors have invested in these projects.

8. With respect to the Assignment by Smarie to Sells of the Madhavani trust deed ("Trust Deed"), which assignment was executed by the David and Stacey Romo on behalf of Smarie a few days before the original sale hearing scheduled for July 12, I would like the Court to consider the following facts.

9. Contrary to the assertion of Madhavani's attorney that the Assignment "stripped" Smarie of assets, the Assignment in fact **increased** Smarie's assets. That is because the Assignment by its terms required Sells to forgive and release Smarie of indebtedness of more than $1,700,000, which indebtedness was evidenced by a Promissory Note from Smarie to Sells. This Note was in fact secured by a collateral assignment of the Trust Deed, and by a recorded UCC-1. The Trust Deed itself secures an obligation of approximately $1,000,000, so Smarie effectively realized a net gain of approximately $700,000 by reason of the Assignment.

10. When the $1,700,000 Promissory Note from Smarie to Sells went into default, Sells began a UCC foreclosure in early July 2011. The UCC foreclosure sale was scheduled to occur on July 22, which of course was after the scheduled sale of Smarie. Therefore, in order to allow Sells to protect its security interest in the Deed of Trust, and also in order to create more value in Smarie by being released from all obligations on the

Romo – Opposition to Trustee's Motion for Sale of Assets 2

Dashiell Declaration

$1,700,000 Note, the Romo's executed the Assignment of the Deed of Trust to Sells. This Assignment was essentially in the nature of a deed in lieu of foreclosure; was for valid consideration; and has been recorded in the appropriate County records.

11. The Madhvani's wanted to own Smarie for one simple reason: so that after they acquired Smarie, they could cause Smarie to reconvey, to themselves, a valid deed of trust securing an obligation of approximately $1,000,000 owed by the Madhvani's to the Sells. They would thereby attempt to stop a foreclosure sale which has been scheduled pursuant to the Trust Deed It is unlikely that this reconveyance, had it in fact occurred, would have defeated the Sells' security interest in the Deed of Trust. However, the Assignment from Smarie to Sells removed any doubt about that.

I hereby submit this Declaration under penalty of perjury.

_____
Thomas C. Dashiell

July 22, 2011